```
 1  KAREN P. HEWITT
    United States Attorney
 2  BRUCE C. SMITH
    Assistant U.S. Attorney
 3  California State Bar No. 078225
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California 92101-8893
 5  Telephone: (619) 557-6963

 6  Attorneys for Plaintiff
    United States of America
 7
```

FILED
07 NOV -2 AM 11:14
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY         DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Civil '07 CV 2100 DMS (AJB) |
|---|---|---|
| Plaintiff, | ) | VERIFIED COMPLAINT FOR FORFEITURE |
| v. | ) | |
| ONE 2006 BENTLEY FLYING SPUR SEDAN, CALIFORNIA LICENSE NO. 5GAG721 VIN SCBBR53WX6C036543, ITS TOOLS AND APPURTENANCES, | ) | |
| Defendant. | ) | |

Plaintiff, the United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney and Bruce C. Smith, Assistant U.S. Attorney, brings this verified complaint and alleges as follows against Defendant ONE 2006 BENTLEY FLYING SPUR SEDAN, CALIFORNIA LICENSE NO. 5GAG721 VIN SCBBR53WX6C036543, ITS TOOLS AND APPURTENANCES (hereinafter referred to as "defendant 2006 Bentley sedan"), in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

Jurisdiction and Venue

1.  This Court has jurisdiction over this action by virtue of the provisions of Title 28, United States Code, Section

1355(b)(1), because the acts and omissions giving rise to the forfeiture occurred in this district.

2. Venue is proper in this district pursuant to Title 28, United States code, Section 1395(b) because the defendant 2006 Bentley sedan was found in this district.

Facts

3. An investigation was initiated on or about April 5, 2007, when San Diego Police Department Detective Victor Morel (hereinafter referred to as "Detective Morel") and United States Secret Service Special Agent Eugene Scherba (hereinafter referred to as "Agent Scherba") learned of an investment opportunity being promoted by Thanh-Viet Jeremy Cao (hereinafter referred to as "Cao"), a resident of Santa Margarita, California.

4. In February 2007, Cao formed TG Capital as a Nevada limited liability company. Immediately after its creation, Cao engaged in the fraudulent offer and sale of membership units of TG Capital. As of May of 2007, Cao raised at least $3.78 million from approximately 33 investors. Cao sold membership units of TG Capital as private investment products with guaranteed rates of return.

5. Cao solicited prospective investors to invest in TG Capital at investment seminars at which Cao made presentations. In February or March 2007, Cao held an investment seminar in San Diego, California. At the seminar, Cao directed prospective investors to the Private Placement Memorandum (hereinafter referred to as "PPM") on the company's website at www.tgcapital.net. Cao provided prospective investors either with

1  copies of the TG Capital PPM, or with a means by which to obtain
2  copies of the PPM.
3      6.   In the TG Capital PPM, and when communicating with
4  prospective investors, Cao represented that TG Capital invested in
5  gold, lent money to banks, and invested in banking instruments
6  secured by gold or guaranteed by Wells Fargo Bank.  Wells Fargo
7  Bank is an FDIC insured financial institution.
8      7.   The TG Capital PPM included an exhibit which appears to
9  be a letter written on Wells Fargo Bank stationary, and signed by
10 an employee of Wells Fargo Bank (hereinafter referred to as the
11 "Wells Fargo Letter").  The Wells Fargo Letter bears the familiar
12 Wells Fargo Bank trademark logo.
13     8.   The investigators obtained a copy of the PPM for TG
14 Capital.  The PPM identifies Cao as a founder, member, and its
15 President.
16     9.   On April 6, 2007, Agent Scherba and Detective Morel
17 interviewed a Wells Fargo Bank Fraud Investigator.  The
18 investigator stated Wells Fargo Bank was not involved in TG
19 Capital, and was not guaranteeing or endorsing Cao's TG Capital
20 investment in any way.  Moreover, the Wells Fargo Investigator
21 confirmed Wells Fargo Bank did not authorize Cao to use the
22 trademark Wells Fargo logo in any way.  The investigator
23 acknowledged TG Capital maintained an account at Wells Fargo Bank.
24 The account balance was greater than $1,000,000.00 in U.S.
25 dollars.  The TG Capital account was funded almost exclusively
26 from numerous deposits in the form of checks from investors in
27 amounts ranging from approximately $4,000.00 to $250,000.00.
28

10. Agent Scherba and Detective Morel interviewed a number of TG Capital investors. Prior to submitting funds to Cao, each of the investors was the recipient of Cao's TG Capital PPM. Each investor relied upon the materials they received from Cao. Several of the investors interviewed by Agent Scherba and Detective Morel stated that they would not have invested in TG Capital had they known that Wells Fargo Bank was not guaranteeing TG Capital's investments.

11. When promoting TG Capital to prospective investors, Cao promised they would receive guaranteed returns that far exceeded the market rate for legitimate investment products requiring a similar minimum dollar placement.

12. On April 10, 2007, Agent Scherba and Detective Morel interviewed Cao in the presence of his legal counsel. Cao admitted that Wells Fargo was not backing or guaranteeing TG Capital or the TG Capital investment in any way. Cao also admitted he placed the familiar Wells Fargo Bank logo on the TG Capital PPM Wells Fargo Letter without permission or authorization from Wells Fargo Bank. Cao explained he used his personal computer to create the PPM and the Wells Fargo Letter. Cao obtained a copy of the familiar Wells Fargo Bank trademark logo from another document. Using his personal computer, Cao inserted the Wells Fargo Bank trademark onto the TG Capital PPM Wells Fargo Letter he created.

13. During the April 10, 2007 interview, Agent Scherba and Detective Morel asked Cao to identify his TG Capital investors. Cao explained all of his TG Capital investor information was on his personal computer. However, Cao claimed the computer was lost

or stolen in mid-February 2007. Cao stated he did not file a police report regarding the missing computer. Later in the interview, Cao admitted the computer was seized pursuant to a search warrant executed by the Orange County Sheriff's Department.

14. Between the months of February and May of 2007, Cao misled investors as to the nature of TG Capital investment and risks. Specifically, Cao created and disseminated a PPM and bogus Wells Fargo Letter to investors. The PPM and Wells Fargo Letter falsely stated Wells Fargo Bank guaranteed the investment. Cao failed to obtain actual bank guarantees as promised in the TG Capital PPM. Cao failed to invest in banking instruments as promised in the TG Capital PPM. Cao failed to secure the TG Capital investment with gold as promised in the TG Capital PPM. Cao misappropriated and misused investor funds by transferring approximately $1.78 million in investor monies overseas, purportedly to make an unsecured personal loan at a rate of interest too low to pay investors the promised rate of return.

15. On May 22, 2007, the Securities and Exchange Commission (hereinafter referred to as "SEC") filed an emergency action against TG Capital and Cao with the United States District Court, Central District of California. The Court responded by ordering, among other things, a temporary restraining order, an asset freeze, and the repatriation of assets sent overseas.

16. During the April 10, 2007 interview with the investigators, Cao revealed he created, promoted and sold other investment opportunities to investors. Cao advised he operated a series of third party proposition player enterprises. Under California law, a licensed gambling establishment may contract

with a third party for the purpose of providing proposition player services. Cao explained he created companies that provide investors the opportunity to pool their dollars and act as a "bank" for licensed California casinos. Cao claimed his companies perform the function of third party proposition players for licensed California casinos.

17. Agent Scherba obtained documents indicating Cao created and operated a number of third party proposition player companies. Two of the companies discovered by Agent Scherba were Northpoint Ventures, Inc. (hereinafter referred to as "Northpoint") and Titan Financiers (hereinafter referred to as "Titan"). According to documents filed with the Nevada Secretary of State, Cao is the Director, President, Secretary, and Treasurer of both Northpoint and Titan.

18. On or about May 7, 2007, Agent Scherba interviewed a person who invested both in Northpoint and Titan. He recounted investing $27,000.00 in Northpoint, and $50,000.00 in Titan. Agent Scherba obtained copies of the investor's cancelled checks. One check, dated October 15, 2005, was in the amount of $50,000, and made payable to Titan. The check was deposited into a Titan bank account controlled by Cao. The second check was in the amount of $20,000, was dated January 13, 2006, and made payable to Northpoint. The check was deposited into a Northpoint bank account controlled by Cao. The investor revealed that Cao told him Northpoint was a third party proposition player at Commerce Casino in Los Angeles County, and Titan was a third party proposition player at Hawaiian Gardens Casino in Los Angeles County. Both are popular, well-known licensed California casinos.

|   |   |
|---|---|
| 1 | The investor provided Agent Scherba with documents he received |
| 2 | from Cao.  The documents were sent by Cao to the interviewee as a |
| 3 | prospective investor, before the interviewee had placed any funds |
| 4 | with Cao.  The promotional documents assure the reader that |
| 5 | investors in Northpoint and Titan were "guaranteed" a "low" |
| 6 | investment return of 2% return per month and a "likely" investment |
| 7 | return of 4% per month.  That translates to a guaranteed minimum |
| 8 | annual investment yield of 24%, but a more probable return of 48% |
| 9 | per annum. |
| 10 | 19.   On May 8, 2007, Agent Scherba was provided a letter by |
| 11 | a Northpoint investor.  The letter, dated April 9, 2007, bears |
| 12 | what Agent Scherba recognized as the signature of Cao.  The letter |
| 13 | advises the reader that Northpoint's bank account at Wells Fargo |
| 14 | Bank had been "frozen" due to suspicion of identity theft.  Agent |
| 15 | Scherba contacted a Wells Fargo Bank investigator and inquired |
| 16 | about the status of the Northpoint account.  The Wells Fargo Bank |
| 17 | investigator confirmed Northpoint maintained an account with Wells |
| 18 | Fargo Bank, and that the account was frozen.  However the account |
| 19 | was frozen by Wells Fargo Bank in response to its discovery that |
| 20 | Cao was making false promises to investors and representing that |
| 21 | Wells Fargo Bank was guaranteeing Cao's investments.  The Wells |
| 22 | Fargo Bank investigator insisted the subject of "identity theft" |
| 23 | had nothing to do with the bank's action.  The explanation of |
| 24 | "identity theft" as the reason for the freezing of the Northpoint |
| 25 | bank account was used by Cao to fraudulently assure dissatisfied |
| 26 | and suspicious investors that their funds were not in jeopardy. |
| 27 | 20.   On or about May 9, 2007, Agent Scherba spoke with |
| 28 | Deborah Dunn (hereinafter referred to as "Dunn") of the licensing |

1  section of the California Department of Justice Gaming Division.
2  Dunn explained third party proposition players, or entities acting
3  in that capacity, are required by California law to have a license
4  to operate in this state. Dunn confirmed to Agent Scherba that
5  neither Cao, nor Northpoint, nor Titan had a license to operate as
6  a third party proposition player in California casinos. According
7  to Ms. Dunn, without such a license, Cao, Northpoint and Titan
8  could not legally operate as third party proposition players in
9  California.
10      21.  One of the investors interviewed by Agent Scherba
11 recounted that when promoting the Titan investment, Cao
12 represented that Titan was a third party proposition player at
13 Hawaiian Gardens Casino in Los Angeles County. On or about May
14 25, 2007, Agent Scherba spoke with an employee of Hawaiian Garden
15 Casino. The casino representative indicated that an entity known
16 as "Network M" has been the sole and exclusive third party
17 proposition player operating at Hawaiian Garden Casino for the
18 last three years. The representative confirmed neither Cao,
19 Northpoint, nor Titan have any such involvement with the Hawaiian
20 Garden Casino.
21      22.  Cao purchased the defendant 2006 Bentley sedan from
22 Newport Auto Center, Newport Beach, California for approximately
23 $204,182.34. On June 21, 2005, he initiated the purchase by
24 making a $5,000.00 down payment using an American Express credit
25 card. On March 7, 2006, Cao paid an additional $1,412.86, using
26 another American Express credit card. On that same date, he
27 presented the dealership with a Wells Fargo Bank cashier's check
28

in the amount of $197,769.48. Cao took delivery of the defendant 2006 Bentley sedan on or about that same day.

23. Based on an analysis of banking activity leading up to the March 7, 2006 purchase of the defendant 2006 Bentley sedan, Cao consolidated investor funds from multiple investment accounts into a single account. The investor funds were withdrawn by Cao from a host of investor accounts he maintained, and deposited into an Eastpoint Management (hereinafter referred to as "Eastpoint") Wells Fargo Bank account. The Eastpoint account in which Cao deposited the investor funds had an account number ending in 9819 (hereinafter referred to as "Eastpoint account #9819"). The signatory on Eastpoint account #9819 was Cao.

24. On or about March 7, 2006, Cao withdrew approximately $197,769.48 from the Eastpoint account #9819, and purchased the Wells Fargo Bank cashier's check. On or about that same date, Cao presented that cashier's check to Newport Auto Center in final payment for the defendant 2006 Bentley sedan.

25. By withdrawing funds from a number of investor accounts and depositing the funds into a single account, Eastpoint account #9819, Cao disguised and concealed the true sources of funds he used to purchase the defendant 2006 Bentley sedan. Such financial maneuvering made the task of tracing the defendant 2006 Bentley sedan purchase proceeds back to a specific investor fund more difficult.

26. According to the records of the California Department of Motor Vehicles, Cao is the registered owner of the defendant 2006 Bentley sedan.

27. Cao purchased the defendant 2006 Bentley sedan with investors' funds that had been wired and deposited into bank accounts he controlled. The investors wired and delivered their funds to Cao in reliance upon his representations their monies would be pooled together with those from other investors to create third party proposition player enterprises. Those enterprises, in turn, would engage in the financing of specific California casino operations. In reality, Cao did not establish licensed third party proposition player enterprises. Rather, he converted the funds to his own use.

28. The defendant 2006 Bentley sedan is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) because it constitutes, or is derived from, proceeds traceable to violations of Title 18, United States Code Sections 1341, mail fraud, and 1343, wire fraud.

29. Alternatively, the defendant 2006 Bentley sedan is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1) because it is property involved in, or is traceable to property involved in, violations of Title 18, United States Code Section 1957, money laundering. Specifically, on or about March 7, 2006, when finalizing the purchase of the defendant 2006 Bentley sedan, Cao knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000.00 which was derived from the specified unlawful activities of mail fraud and/or wire fraud.

30. Alternatively, the defendant 2006 Bentley sedan is also subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) because it is property traceable to property

involved in violations of Title 18, United States Code, Section 1956(a)(1)(B)(I). Specifically, when Cao consolidated the fraudulently obtained funds from a number of investor accounts and deposited the funds into a single account, to wit: Eastpoint account #9819, knowing that the property involved in the financial transaction or series of financial transactions represented the proceeds of some form of unlawful activity, Cao conducted the financial transaction(s), which, in fact involved the proceeds of specified unlawful activities knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activities.

31. The defendant 2006 Bentley sedan is presently stored within the jurisdiction of this Court.

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant 2006 Bentley sedan, and that due notice be given to all interested parties to appear and show cause why said forfeiture should not be declared.

DATED: 11/02/07

KAREN P. HEWITT
United States Attorney

BRUCE C. SMITH
Assistant U.S. Attorney

## VERIFICATION

I, Eugene Scherba, state and declare as follows:

1. I am a Special Agent with United States Secret Service and am the case agent assigned to this investigation.

2. I have read the foregoing complaint and know its contents.

3. The facts set forth in the complaint are based upon my own knowledge or were facts furnished to me by official Government sources.

Based on this information, I believe the allegations in the complaint to be true.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on November 1, 2007

*Eugene Scherba* [signature]
EUGENE SCHERBA, SPECIAL AGENT
UNITED STATES SECRET SERVICE

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS '07 CV 2100 DMS (AJB) |
|---|---|
| United States of America | See Continuation page for defendant. |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego County (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  San Diego (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) BRUCE C. SMITH, Assistant U.S. Attorney 880 Front Street, Room 6293 San Diego CA 92101-8893 (619) 557-6963 | ATTORNEYS (IF KNOWN) |

07 NOV -2 AM 11:13
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX (For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

**18 U.S.C. § 981(a)(1)(C), forfeiture for violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud)**

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 U.S.C. 158 | ☐ 400 State Reappointment |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 U.S.C. 157 | ☐ 410 Antitrust |
| ☐ Marine | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ Negotiable Instrument | ☐ 330 Federal Employers' Liability | | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (13958) | ☐ 850 Securities/Commodities Exchange |
| | | ☐ 370 Other Fraud | ☒ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 875 Customer Challenge 12 U.S.C. |
| ☐ 160 Stockholders Suits | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 U.S.C. 7609 | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejection | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ Security Act | | |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23  DEMAND $  Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):  JUDGE _____  Docket Number _____

DATE   Nov. 1, 2007        SIGNATURE OF ATTORNEY OF RECORD
                            BRUCE C. SMITH, AUSA

INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should completed the form as follows:

I.(a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place the "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, it officers or agencies, place an X in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

V. Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action , in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI. Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

VII. Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. Related Cases. This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.
(rev. 07/89)

CIVIL COVER SHEET CONTINUED

| | |
|---|---|
| ONE 2006 BENTLEY FLYING SPUR SEDAN, CALIFORNIA LICENSE NO. 5GAG721 VIN SCBBR53WX6C036543, ITS TOOLS AND APPURTENANCES, | ) ) ) ) ) ) |
| Defendant. | ) |