1  KAREN P. HEWITT
   United States Attorney
2  BRUCE C. SMITH
   Assistant U.S. Attorney
3  California State Bar No. 078225
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6963
   E-mail: bruce.smith@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                  UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,        )  Case No. 07cv2100-DMS(AJB)
                                    )
11            Plaintiff,            )  MEMORANDUM OF POINTS AND
                                    )  AUTHORITIES IN SUPPORT OF
12        v.                        )  MOTION FOR JUDGMENT BY DEFAULT
                                    )  AS TO THE INTEREST OF JEREMY CAO,
13                                  )  CRAIG LAKE, AND ALL POTENTIAL
   ONE 2006 BENTLEY FLYING SPUR     )  CLAIMANTS
14 SEDAN, CALIFORNIA LICENSE        )
   NO. 5GAG721                      )  DATE:  March 21, 2008
15 VIN SCBBR53WX6C036543,           )  TIME:   1:30 p.m.
   ITS TOOLS AND APPURTENANCES,     )  CTRM: 10
16                                  )
              Defendant.            )
17                                  )
   _____)
18

19                              I

20          MEMORANDUM OF POINTS AND AUTHORITIES

21        A.    Introduction

22        This matter comes before the Court on Plaintiff's motion for default judgment.  The verified

23 complaint commencing this action against the Defendant was filed November 2, 2007, alleging

24 forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) because it constitutes, or

25 is derived from, proceeds traceable to violations of Title 18, United States Code Sections 1341,

26 mail fraud, and 1343, wire fraud, Title 18, United States Code, Section 981(a)(1) because it is

27 property involved in, or is traceable to property involved in, violations of Title 18, United States

28 Code Section 1957, money laundering, and Title 18, United States Code, Section 981(a)(1)(A)

because it is property traceable to property involved in violations of Title 18, United States Code, Section 1956(a)(1)(B)(I). The complaint incorporated the verification of Special Agent Eugene Scherba . The present motion for default judgment seeks the forfeiture of the interest of Jeremy Cao, Craig Lake, and all potential claimants.

        B.      Statement of the Case

        1.      On November 2, 2007, a Complaint for Forfeiture was filed in the above action in the United States District Court for the Southern District of California against the above defendant. On January 11,2008, the defendant was seized and arrested by the United States Secret Service, who thereafter took possession and custody of the defendant, pursuant to the Court's Order appointing the United States Secret Service as custodian, dated November 5, 2007.

        2.      On November 30, December 7, and December 14, 2007, pursuant to Rule G(5), Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, notice was published in the San Diego Commerce.

        3.      On November 5, 2007, a Notice of Complaint and a copy of the Complaint for Forfeiture were sent by certified mail as follows:

| Name and address | Article No. | Result |
|---|---|---|
| Jeremy Cao<br>13 Allyssum<br>Rancho Santa Margar, CA 92688 | 70042510000330174069 | Signed for as Received on 11/16/07 |
| Craig Lake<br>7951 Broadway<br>Lemon Grove, CA  91945 | 70042510000330174052 | Signed for as Received on 11/07/07 |

        From the time of said notice, no claim or answer has been filed regarding the above-named defendant.

        On January 30, 2008, a Declaration of and Request for Clerk's Entry of Default was filed in this case. A Clerk's Entry of Default was issued on January 30, 2008, and a copy is hereby attached as Exhibit 1.

        C.      Statement of Facts

        An investigation was initiated on or about April 5, 2007, when San Diego Police Department Detective Victor Morel (hereinafter referred to as "Detective Morel") and United

States Secret Service Special Agent Eugene Scherba (hereinafter referred to as "Agent Scherba") learned of an investment opportunity being promoted by Thanh-Viet Jeremy Cao (hereinafter referred to as "Cao"), a resident of Santa Margarita, California.

In February 2007, Cao formed TG Capital as a Nevada limited liability company. Immediately after its creation, Cao engaged in the fraudulent offer and sale of membership units of TG Capital. As of May of 2007, Cao raised at least $3.78 million from approximately 33 investors. Cao sold membership units of TG Capital as private investment products with guaranteed rates of return.

Cao solicited prospective investors to invest in TG Capital at investment seminars at which Cao made presentations. In February or March 2007, Cao held an investment seminar in San Diego, California. At the seminar, Cao directed prospective investors to the Private Placement Memorandum (hereinafter referred to as "PPM") on the company's website at www.tgcapital.net. Cao provided prospective investors either with copies of the TG Capital PPM, or with a means by which to obtain copies of the PPM.

In the TG Capital PPM, and when communicating with prospective investors, Cao represented that TG Capital invested in gold, lent money to banks, and invested in banking instruments secured by gold or guaranteed by Wells Fargo Bank. Wells Fargo Bank is an FDIC insured financial institution.

The TG Capital PPM included an exhibit which appears to be a letter written on Wells Fargo Bank stationary, and signed by an employee of Wells Fargo Bank (hereinafter referred to as the "Wells Fargo Letter"). The Wells Fargo Letter bears the familiar Wells Fargo Bank trademark logo.

The investigators obtained a copy of the PPM for TG Capital. The PPM identifies Cao as a founder, member, and its President.

On April 6, 2007, Agent Scherba and Detective Morel interviewed a Wells Fargo Bank Fraud Investigator. The investigator stated Wells Fargo Bank was not involved in TG Capital, and was not guaranteeing or endorsing Cao's TG Capital investment in any way. Moreover, the Wells Fargo Investigator confirmed Wells Fargo Bank did not authorize Cao to use the trademark Wells

3

1   Fargo logo in any way. The investigator acknowledged TG Capital maintained an account at Wells

2   Fargo Bank. The account balance was greater than $1,000,000.00 in U.S. dollars. The TG Capital

3   account was funded almost exclusively from numerous deposits in the form of checks from

4   investors in amounts ranging from approximately $4,000.00 to $250,000.00.

5          Agent Scherba and Detective Morel interviewed a number of TG Capital investors. Prior

6   to submitting funds to Cao, each of the investors was the recipient of Cao's TG Capital PPM. Each

7   investor relied upon the materials they received from Cao. Several of the investors interviewed

8   by Agent Scherba and Detective Morel stated that they would not have invested in TG Capital had

9   they known that Wells Fargo Bank was not guaranteeing TG Capital's investments.

10          When promoting TG Capital to prospective investors, Cao promised they would receive

11  guaranteed returns that far exceeded the market rate for legitimate investment products requiring

12  a similar minimum dollar placement.

13          On April 10, 2007, Agent Scherba and Detective Morel interviewed Cao in the presence

14  of his legal counsel. Cao admitted that Wells Fargo was not backing or guaranteeing TG Capital

15  or the TG Capital investment in any way. Cao also admitted he placed the familiar Wells Fargo

16  Bank logo on the TG Capital PPM Wells Fargo Letter without permission or authorization from

17  Wells Fargo Bank. Cao explained he used his personal computer to create the PPM and the Wells

18  Fargo Letter. Cao obtained a copy of the familiar Wells Fargo Bank trademark logo from another

19  document. Using his personal computer, Cao inserted the Wells Fargo Bank trademark onto the

20  TG Capital PPM Wells Fargo Letter he created.

21          During the April 10, 2007 interview, Agent Scherba and Detective Morel asked Cao to

22  identify his TG Capital investors. Cao explained all of his TG Capital investor information was

23  on his personal computer. However, Cao claimed the computer was lost or stolen in mid-February

24  2007. Cao stated he did not file a police report regarding the missing computer. Later in the

25  interview, Cao admitted the computer was seized pursuant to a search warrant executed by the

26  Orange County Sheriff's Department.

27          Between the months of February and May of 2007, Cao misled investors as to the nature

28  of TG Capital investment and risks. Specifically, Cao created and disseminated a PPM and bogus

4

1    Wells Fargo Letter to investors. The PPM and Wells Fargo Letter falsely stated Wells Fargo Bank

2    guaranteed the investment. Cao failed to obtain actual bank guarantees as promised in the TG

3    Capital PPM. Cao failed to invest in banking instruments as promised in the TG Capital PPM.

4    Cao failed to secure the TG Capital investment with gold as promised in the TG Capital PPM. Cao

5    misappropriated and misused investor funds by transferring approximately $1.78 million in

6    investor monies overseas, purportedly to make an unsecured personal loan at a rate of interest too

7    low to pay investors the promised rate of return.

8        On May 22, 2007, the Securities and Exchange Commission (hereinafter referred to as

9    "SEC") filed an emergency action against TG Capital and Cao with the United States District

10    Court, Central District of California. The Court responded by ordering, among other things, a

11    temporary restraining order, an asset freeze, and the repatriation of assets sent overseas.

12        During the April 10, 2007 interview with the investigators, Cao revealed he created,

13    promoted and sold other investment opportunities to investors. Cao advised he operated a series

14    of third party proposition player enterprises. Under California law, a licensed gambling

15    establishment may contract with a third party for the purpose of providing proposition player

16    services. Cao explained he created companies that provide investors the opportunity to pool their

17    dollars and act as a "bank" for licensed California casinos. Cao claimed his companies perform

18    the function of third party proposition players for licensed California casinos.

19        Agent Scherba obtained documents indicating Cao created and operated a number of third

20    party proposition player companies. Two of the companies discovered by Agent Scherba were

21    Northpoint Ventures, Inc. (hereinafter referred to as "Northpoint") and Titan Financiers

22    (hereinafter referred to as "Titan"). According to documents filed with the Nevada Secretary of

23    State, Cao is the Director, President, Secretary, and Treasurer of both Northpoint and Titan.

24        On or about May 7, 2007, Agent Scherba interviewed a person who invested both in

25    Northpoint and Titan. He recounted investing $27,000.00 in Northpoint, and $50,000.00 in Titan.

26    Agent Scherba obtained copies of the investor's cancelled checks. One check, dated October 15,

27    2005, was in the amount of $50,000, and made payable to Titan. The check was deposited into a

28    Titan bank account controlled by Cao. The second check was in the amount of $20,000, was dated

1 │ January 13, 2006, and made payable to Northpoint.  The check was deposited into a Northpoint

2 │ bank account controlled by Cao.  The investor revealed that Cao told him Northpoint was a third

3 │ party proposition player at Commerce Casino in Los Angeles County, and Titan was a third party

4 │ proposition player at Hawaiian Gardens Casino in Los Angeles County.  Both are popular, well-

5 │ known licensed California casinos.  The investor provided Agent Scherba with documents he

6 │ received from Cao.  The documents were sent by Cao to the interviewee as a prospective investor,

7 │ before the interviewee had placed any funds with Cao.  The promotional documents assure the

8 │ reader that investors in Northpoint and Titan were "guaranteed" a "low" investment return of 2%

9 │ return per month and a "likely" investment return of 4% per month.  That translates to a guaranteed

10 │ minimum annual investment yield of 24%, but a more probable return of 48% per annum.

11 │ 　　　On May 8, 2007, Agent Scherba was provided a letter by a Northpoint investor.  The letter,

12 │ dated April 9, 2007, bears what Agent Scherba recognized as the signature of Cao.  The letter

13 │ advises the reader that Northpoint's bank account at Wells Fargo Bank had been "frozen" due to

14 │ suspicion of identity theft.  Agent Scherba contacted a Wells Fargo Bank investigator and inquired

15 │ about the status of the Northpoint account.  The Wells Fargo Bank investigator confirmed

16 │ Northpoint maintained an account with Wells Fargo Bank, and that the account was frozen.

17 │ However the account was frozen by Wells Fargo Bank in response to its discovery that Cao was

18 │ making false promises to investors and representing that Wells Fargo Bank was guaranteeing Cao's

19 │ investments. The Wells Fargo Bank investigator insisted the subject of "identity theft" had nothing

20 │ to do with the bank's action.  The explanation of "identity theft" as the reason for the freezing of

21 │ the Northpoint bank account was used by Cao to fraudulently assure dissatisfied and suspicious

22 │ investors that their funds were not in jeopardy.

23 │ 　　　On or about May 9, 2007, Agent Scherba spoke with Deborah Dunn (hereinafter referred

24 │ to as "Dunn") of the licensing section of the California Department of Justice Gaming Division.

25 │ Dunn explained third party proposition players, or entities acting in that capacity, are required by

26 │ California law to have a license to operate in this state.  Dunn confirmed to Agent Scherba that

27 │ neither Cao, nor Northpoint, nor Titan had a license to operate as a third party proposition player

28 │

1    in California casinos.  According to Ms. Dunn, without such a license, Cao, Northpoint and Titan

2    could not legally operate as third party proposition players in California.

3        One of the investors interviewed by Agent Scherba recounted that when promoting the

4    Titan investment, Cao represented that Titan was a third party proposition player at Hawaiian

5    Gardens Casino in Los Angeles County.  On or about May 25, 2007, Agent Scherba spoke with

6    an employee of Hawaiian Garden Casino.  The casino representative indicated that an entity known

7    as "Network M" has been the sole and exclusive third party proposition player operating at

8    Hawaiian Garden Casino for the last three years.  The representative confirmed neither Cao,

9    Northpoint, nor Titan have any such involvement with the Hawaiian Garden Casino.

10    Cao purchased the defendant 2006 Bentley sedan from Newport Auto Center, Newport

11    Beach, California for approximately $204,182.34.  On June 21, 2005, he initiated the purchase by

12    making a $5,000.00 down payment using an American Express credit card.  On March 7, 2006,

13    Cao paid an additional $1,412.86, using another American Express credit card.  On that same date,

14    he presented the dealership with a Wells Fargo Bank cashier's check in the amount of $197,769.48.

15    Cao took delivery of the defendant 2006 Bentley sedan on or about that same day.

16    Based on an analysis of banking activity leading up to the March 7, 2006 purchase of the

17    defendant 2006 Bentley sedan, Cao consolidated investor funds from multiple investment accounts

18    into a single account.  The investor funds were withdrawn by Cao from a host of investor accounts

19    he maintained, and deposited into an Eastpoint Management (hereinafter referred to as

20    "Eastpoint") Wells Fargo Bank account.  The Eastpoint account in which Cao deposited the

21    investor funds had an account number ending in 9819 (hereinafter referred to as "Eastpoint account

22    #9819").  The signatory on Eastpoint account #9819 was Cao.

23    On or about March 7, 2006, Cao withdrew approximately $197,769.48 from the Eastpoint

24    account #9819, and purchased the Wells Fargo Bank cashier's check.  On or about that same date,

25    Cao presented that cashier's check to Newport Auto Center in final payment for the defendant

26    2006 Bentley sedan.

27    By withdrawing funds from a number of investor accounts and depositing the funds into

28    a single account, Eastpoint account #9819, Cao disguised and concealed the true sources of funds

1  he used to purchase the defendant 2006 Bentley sedan. Such financial maneuvering made the task

2  of tracing the defendant 2006 Bentley sedan purchase proceeds back to a specific investor fund

3  more difficult.

4         According to the records of the California Department of Motor Vehicles, Cao is the

5  registered owner of the defendant 2006 Bentley sedan.

6         Cao purchased the defendant 2006 Bentley sedan with investors' funds that had been wired

7  and deposited into bank accounts he controlled. The investors wired and delivered their funds to

8  Cao in reliance upon his representations their monies would be pooled together with those from

9  other investors to create third party proposition player enterprises. Those enterprises, in turn,

10  would engage in the financing of specific California casino operations. In reality, Cao did not

11  establish licensed third party proposition player enterprises. Rather, he converted the funds to his

12  own use.

13         D.    Deadlines for Filing a Claim and Answer

14         This civil forfeiture action is an in rem proceeding which is governed by Rule G(5) of the

15  Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims. Pursuant to

16  Rule G(5), a verified claim must be filed with the Clerk of the United States District Court,

17  Southern District of California, with a copy to the Government attorney, within thirty-five (35)

18  days after service of the Notice of Judicial Forfeiture Proceedings, or within such additional time

19  as the court may allow. An answer must be filed and served within twenty (20) days thereafter,

20  pursuant to Title 18, United States Code, Section 983(a)(4)(B).

21         Supplemental Rule G(5) provides in pertinent part: "The claim must: (A) identify the

22  specific property claimed; (B) identify the claimant and state the claimant's interest in the property;

23  (C) be signed by the claimant under penalty of perjury; and (D) be served on the government

24  attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

25         The plaintiff served notice of forfeiture on all known potential claimants on November 5,

26  2007. From the time of said notice, no claim or answer has been filed by any potential claimants

27  regarding the above-named defendant. (See Declaration of Bruce C. Smith, attached hereto as

28  Exhibit 2.)

1      E.      The Government Establishes Its Case by a Preponderance
               of the Evidence

2

3      Pursuant to the Civil Asset Forfeiture Reform Act of 2000 the burden of proof in civil

4  forfeiture cases is a preponderance of the evidence.  Title 18, United States Code, Section 983(c)

5  states in pertinent part:

6      In a suit or action brought under any civil forfeiture statute for the civil forfeiture

7      of any property -

8      (1)      the burden of proof is on the Government to establish, by a preponderance
               of the evidence, that the property is subject to forfeiture;

9

10     (2)      the Government may use evidence gathered after the filing of the complaint
               for forfeiture to establish, by a preponderance of the evidence, that the property is
               subject to forfeiture; and

11

12     (3)      if the Government's theory of forfeiture is that the property was used to
               commit or facilitate the commission of a criminal offense, or was involved in the
               commission of a criminal offense, the Government shall establish that there was a
13             substantial connection between the property and the offense.

14     The Government's evidence is undisputed by any claimant.  Thus, the Government has

15  shown by a preponderance of the evidence that the defendant vehicle was involved in a transaction

16  or attempted transaction, or was property traceable to property involved in violation of Title 18,

17  United States Code Sections 1341, mail fraud, and 1343, wire fraud, Title 18, United States Code

18  Section 1957, money laundering, and Title 18, United States Code, Section 1956(a)(1)(B)(I).

19     Pursuant to the allegations in the verified complaint that the defendant vehicle constitutes,

20  or was derived from, proceeds traceable to violations of Title 18, United States Code Sections

21  1341, mail fraud, and 1343, wire fraud, the Government has both proven its case by a

22  preponderance of the evidence and established the requisite nexus between the defendant and the

23  offense.

24  ///

25  ///

26  ///

27  ///

28  ///

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II

CONCLUSION

For the foregoing reasons, it is requested that the interest of Jeremy Cao, Craig Lake, and any other potential claimants be ordered condemned and forfeited to the United States according to the request herein.

DATED:  February 5, 2008.

KAREN P. HEWITT
United States Attorney

s//Bruce C. Smith

BRUCE C. SMITH
Assistant U.S. Attorney
Attorneys for Plaintiff
United States of America
E-mail: bruce.smith@usdoj.gov