1   KAREN P. HEWITT
    United States Attorney
2   BRUCE C. SMITH
    Assistant U.S. Attorney
3   California State Bar No. 078225
    U.S. Attorney's Office
4   Federal Office Building
    880 Front Street, Room 6293
5   San Diego, California 92101-8893
    Telephone:  (619) 557-6963
6   E-Mail: bruce.smith@usdoj.gov

7   Attorneys for Plaintiff
    United States of America

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11  UNITED STATES OF AMERICA,      )   Case No. 07cv2100-DMS(AJB)
                                   )
12              Plaintiff,         )
                                   )   PLAINTIFF'S RESPONSE AND
13        v.                       )   OPPOSITION TO CRAIG LAKE'S
                                   )   MOTION TO SET ASIDE COURT'S
14  ONE 2006 BENTLEY FLYING SPUR   )   ORDER GRANTING PLAINTIFF'S
    SEDAN, CALIFORNIA LICENSE      )   MOTION FOR JUDGMENT BY
15  NO. 5GAG721                    )   DEFAULT
    VIN: SCBBR53WX6036543,         )
16  ITS TOOLS AND APPURTENANCES,   )   DATE:  May 16, 2008
                                   )   TIME:  1:30 P.M.
17              Defendant.         )   CTRM:  10
    ───────────────────────────────)

18

19  TO:  CRAIG O. LAKE

20        COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through

21  its counsel, Karen P. Hewitt, United States Attorney, and Bruce C.

22  Smith, Assistant United States Attorney, and hereby files its response

23  and opposition to Craig Lake's motion to set aside the Court's order

24  granting plaintiff's motion for judgment by default.  Said response

25  is based upon the files and records of this case, together with the

26  attached statement of facts, statement of facts, and memorandum of

27  points and authorities.

28  //

I

<u>STATEMENT OF CASE</u>

On May 25, 2007, the Honorable Anthony J. Battaglia, U.S. Magistrate Judge of this Court, issued a seizure warrant for the above-referenced defendant 2006 Bentley Flying Spur sedan, vehicle identification number ("VIN") SCBBR53WX6C036543, and bearing California license number 5GAG721 (hereinafter referred to as "2006 Bentley Flying Spur sedan" or "defendant vehicle"). The registered owner of the vehicle was and remains Jeremy Cao of Rancho Santa Margarita, California. The seizure warrant was issued on grounds the defendant 2006 Bentley Flying Spur sedan constituted, was derived from, or represented proceeds traceable to violations of Title 18, United States Code, Section 1343 - wire fraud, and Title 18, United States Code, Section 1957 - money laundering.

On June 1, 2007, agents of the United States Secret Service (hereinafter referred to as "USSS") seized the defendant 2006 Bentley Flying Spur sedan at a location in this district. At the moment of the seizure, the defendant vehicle was in the possession of Trevor Lake and Craig Lake.

On July 12, 2007, the seizing authority sent written notices re: seizure of property to Jeremy Cao, Trevor Lake, and Craig Lake. On or about August 16, 2007, Craig Lake sent a document entitled "Seized Asset Claim Form" to the USSS, claiming an interest in the 2006 Bentley Flying Spur sedan.

On November 2, 2007, the government filed its verified complaint for forfeiture in the instant case. On November 5, 2007, the government sent a copy of the verified complaint for forfeiture and a written notice of judicial forfeiture proceedings to Jeremy Cao and

07cv2100

Craig Lake.  The notice instructed the recipients to file with this Court their verified claim within 35 days, and to file their answer to the complaint within 20 days of the filing of their verified claim. Craig Lake received his copy of the verified complaint for forfeiture and notice of judicial forfeiture proceedings on November 7, 2007. Jeremy Cao received his materials on November 16, 2007.  The government received no response from either potential claimant.

On January 30, 2008, the government filed with this Court its declaration of and request for clerk's entry of default as to the interest of Jeremy Cao and Craig Lake.

On February 5, 2008, the government filed with this Court its notice of motion and motion for judgment by default as to the interest of Jeremy Cao, Craig Lake, and all potential claimants.  On the cover page of its filing, the government noticed March 21, 2008 at 1:30 p.m., in Courtroom 10 as the date, time and place for the hearing. That same day, copies of the government's filing were sent to Jeremy Cao at his Rancho Santa Margarita, California address, and to Craig Lake at his Lemon Grove, California address.  The government received no response from either potential claimant.

On March 14, 2008, this Court issued its order granting plaintiff's motion for judgment by default against Jeremy Cao, Craig Lake, and all potential claimants.  That same day, the clerk's default judgment in a civil case was entered.

On or about March 20, 2008, Craig Lake lodged with this Court documents entitled Notice of Motion and Motion to Set Aside Entry of Default, and Points and Authorities in Support of Application for Relief from Entry of Default.  The documents did not comply with the requirements of the Local Rules, and were initially rejected by the

Clerk of the Court.  On March 21, 2008, however, this Court issued its order directing the Clerk to file the documents *nunc pro tunc* to the date received.

On or about April 4, 2008, Craig Lake lodged with this Court a document entitled Declaration of Craig Orlando Lake and Seized Asset Claim in Support of Application for Relief from Default.  The document did not comply with the requirements of the Local Rules, and was initially rejected by the Clerk of the Court.  On April 8, 2008, however, this Court issued its order directing the Clerk to file the document *nunc pro tunc* to the date received.

On April 7, 2008, this Court issued its order setting a hearing date.  The parties were directed to appear before this Court on May 16, 2008 at 1:30 p.m. for a motion hearing relative to Craig Lake's request of relief from entry of default.

II

STATEMENT OF FACTS

**Purchase of the defendant 2006 Bentley Flying Spur sedan**.  Jeremy Cao (hereinafter referred to as "Cao") purchased the defendant 2006 Bentley Flying Spur sedan as a new vehicle from Newport Auto Center, Newport Beach, California for approximately $204,182.34.

On June 21, 2005, he initiated the purchase by making a $5,000.00 down payment using an American Express credit card.

On March 7, 2006, Cao paid an additional $1,412.86, using another American Express credit card.  On that same date, he presented the dealership with a Wells Fargo Bank cashier's check in the amount of $197,769.48.  Cao took delivery of the defendant 2006 Bentley sedan on or about that same day.

//

4

Based on an analysis of banking activity leading up to the March 7, 2006 purchase of the defendant 2006 Bentley Flying Spur sedan, Cao consolidated investor funds from multiple investment accounts into a single account. The investor funds were withdrawn by Cao from a host of investor accounts he maintained, and deposited into an Eastpoint Management (hereinafter referred to as "Eastpoint") Wells Fargo Bank account. The Eastpoint account in which Cao deposited the investor funds had an account number ending in 9819 (hereinafter referred to as "Eastpoint account #9819"). The signatory on Eastpoint account #9819 was Cao.

On or about March 7, 2006, Cao withdrew approximately $197,769.48 from the Eastpoint account #9819, and purchased the Wells Fargo Bank cashier's check. On or about that same date, Cao presented that cashier's check to Newport Auto Center in final payment for the defendant 2006 Bentley sedan.

On or about March 7, 2006, the auto dealership transferred $1,279.00 to the California Department of Motor Vehicles (hereinafter referred to as "DMV") as the vehicle registration fees for the year. On or about March 1, 2007, Cao paid $1,157.00 to the DMV for the next year's registration fees. Cao's most recent registration fee payment to the DMV for the defendant 2006 Bentley Flying Spur sedan was made on or about March 10, 2008, in the amount of $1,036.00. As recently as March 25, 2008, the official records of the DMV reflected Jeremy Cao of Santa Margarita, California was the sole registered owner of the defendant 2006 Bentley Flying Spur sedan. No lienholder has ever been registered on title. Since the day the defendant vehicle was first sold and registered as a new car until today, Jeremy Cao of Santa Margarita, California has always been the sole registered owner.

**Government seizure of the defendant 2006 Bentley Flying Spur sedan**. On May 25, 2007, a Seizure Warrant was issued by the Honorable Anthony J. Battaglia, U.S. Magistrate Judge of this Court, ordering the seizure of the defendant 2006 Bentley Flying Spur sedan.  On the same date, a tracking device warrant was also issued by a U.S. District Court Judge in this district, ordering the Lojack Corporation to furnish information, facilities, and technical assistance necessary to enable the investigating federal law enforcement agents to locate the defendant vehicle.

Meanwhile, Assistant U.S. Attorney John Owens attempted to negotiate the surrender of the 2006 Bentley Flying Spur sedan with Cao's criminal defense attorney.  On or about May 31, 2007, it became apparent the option of a negotiated surrender of the defendant vehicle had a low probability of success.

On June 1, 2007, the investigating law enforcement agents caused the Lojack system aboard the defendant vehicle to be activated. Shortly after activation, a San Diego Police Department (hereinafter referred to as "SDPD") patrol helicopter detected the Lojack signal being emitted from the 2006 Bentley Flying Spur sedan.  The crew aboard the SDPD helicopter observed the defendant vehicle in the parking lot of a La Jolla, California area apartment complex.  The helicopter crew directed an SDPD patrol vehicle to the area.

As the SDPD helicopter hovered above the stationary defendant vehicle, the crew observed a younger man, later identified as Trevor Lake, standing next the to 2006 Bentley Flying Spur sedan, holding a cellular telephone to his ear.  At one point, Trevor Lake gestured to the SDPD helicopter hovering above him.  Moments later, an older man later identified as Craig Lake, entered the defendant vehicle, and

07cv2100

drove it inside a nearby covered parking structure.  Within minutes, two SDPD patrol officers arrived on the scene.  The officers obtained a set of keys for the defendant vehicle from Craig Lake.

**Craig Lake is interviewed when the defendant vehicle is  seized**. Shortly after the arrival of the SDPD patrol officers, USSS Agent McCaffree and SDPD Detective Morel came to the scene.  While waiting for a tow truck, the agent and detective interviewed Craig Lake.  Lake related the following: Craig Lake and Jeremy Cao, the registered owner of the 2006 Bentley Flying Spur sedan, and their mutual attorney discussed the possibility of a sale of the vehicle to Craig Lake. Lake proposed transferring his ownership of 80 acres of land in Utah to Cao in exchange for title to the defendant vehicle.  Detective Morel asked Craig Lake whether he was aware that a seizure warrant had been issued for the 2006 Bentley Flying Spur sedan.  Lake admitted he was aware of the seizure warrant.  Craig Lake explained he thought that if he took possession of the defendant vehicle before the government seized it, the government would be unable to go forward with the seizure.  Detective Morel asked Lake if he re-registered the 2006 Bentley Flying Spur sedan with the DMV in his name.  Lake advised that he had not done so.

Some time later, while still waiting for the tow truck to arrive, Craig Lake admitted to Detective Morel and USSS Agent McCaffree that his attorney was not present when he discussed buying the 2006 Bentley Flying Spur sedan with Cao.  Lake also confirmed that while discussing the proposed sale of the defendant vehicle, Jeremy Cao told Lake that the government was looking for the defendant vehicle and planned to seize it.

//

**Craig Lake files his claim for the seized 2006 Bentley Flying Spur sedan.**  On or about July 12, 2007, the USSS sent written notice to Craig Lake at 7951 Broadway, Lemon Grove, California (hereinafter referred to as "Lake's Lemon Grove address"), advising him that the defendant vehicle was seized, the legal basis for seizure, and the steps he would have to take to make a claim.  Lake was given until August 16, 2007 as the deadline for filing his claim.  On or about August 16, 2007, Craig Lake sent in his written claim to USSS via facsimile.  In his claim, Lake stated under penalty of perjury, "Cao and I made the sale of the car to me in Feb – at the Fuddruckers in El Torro – 23621 El Torro – 92030 – He then went out of town and wanted to service the car – I had possession when seized."  Craig Lake attached three documents to his claim: (1) a photocopy of the cover sheet of the seizure warrant for the 2006 Bentley Flying Spur sedan; (2) a photocopy of a single page pre-printed document bearing many handwritten amendments and purported signatures entitled, "Real Estate Purchase Contract and Receipt for Deposit;" and (3) a photocopy of what is purported to be the front and back of the single page State of California Certificate of Title for the 2006 Bentley Flying Spur sedan.

**Government counsel contacts Craig Lake and requests all documents in his possession supporting his claim.**  On October 11, 2007, government counsel placed a call to Craig Lake's cellular telephone. When Lake answered, he explained he was at lunch.  Government counsel asked that Lake send him all documents and things in his possession which support his claim of interest in the 2006 Bentley Flying Spur sedan.  Lake said he would do so, and asked government counsel to again call his cellular telephone number and leave counsel's office

mailing address on Lake's voice mail.  Government counsel did as requested.  On October 29, 2007, government counsel received a cover letter and attached materials from Craig Lake.

**Craig Lake is served with the filed verified complaint for forfeiture, and the notice of judicial forfeiture**.  On November 2, 2007, the government filed its verified complaint for forfeiture in the instant case.  On November 5, 2007, the government sent a copy of the verified complaint for forfeiture and a written notice of judicial forfeiture proceedings to Craig Lake at Lake's Lemon Grove address. The notice instructed Lake to file with this Court his verified claim within 35 days, and to file his answer to the complaint within 20 days of the filing of his verified claim.  On November 7, 2007, Craig Lake received his copy of the verified complaint for forfeiture and notice of judicial forfeiture proceedings.

The government received no response from Craig Lake until he lodged his notice of motion and motion to set aside entry of default on March 20, 2008.  Contrary to the representations made by Lake at page 2 of his April 8, 2008 filing, at no time after the filing of the verified complaint for forfeiture did Craig Lake communicate with government counsel via the telephone or in writing.

III

LEGAL ARGUMENT

**A.    Entry of Default and Default Judgment Was Appropriate In This Case and There Is No Good Cause to Set Aside the Default Judgment**

Entry of Default and Default Judgment in this case is governed by Federal Rules of Civil Procedure, Rule 55 (a), (b), and (c) which provides in pertinent part:

//

9

(a) *ENTRY.* When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

(b) *JUDGMENT.* Judgment by default may be entered as follows:

(1) *By the Clerk.* When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

(2) *By the Court.* In all other cases the party entitled to a judgment by default shall apply to the court therefor;
. . .

(c) *Setting Aside Default.* For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

## 1.   All Requirements For Entry of Default and Default Judgment by the Clerk of the Court Were Met.

Here the government complied with the requirements for Entry of Default and Default Judgment by the Clerk of the Court. The verified complaint for forfeiture filed by the government in the instant case clearly describes the asset to be forfeited, and the legal basis upon which the asset can be forfeited. Most importantly, the government clearly alleges in great detail the facts supporting its forfeiture action.

On November 2, 2007, the government filed its verified complaint for forfeiture in the instant case. On November 5, 2007, the government sent a copy of the verified complaint for forfeiture and a written notice of judicial forfeiture proceedings to Craig Lake at Lake's Lemon Grove address. The notice instructed Lake to file with

07cv2100

this Court his verified claim within 35 days, and to file his answer to the complaint within 20 days of the filing of his verified claim. On November 7, 2007, Craig Lake received his copy of the verified complaint for forfeiture and notice of judicial forfeiture proceedings.

The government received no response or reply from Craig Lake. Specifically, he failed to file his verified claim; nor did he file an answer. On January 30, 2008, the government filed its Declaration of and Request for Clerk's Entry of Default as to the Interest of Jeremy Cao, Craig Lake, and all other Potential Claimants.

On January 30, 2008, the Clerk of the Court granted entry of default and default judgment. The clerk's default was later withdrawn and set aside by this Court, and the plaintiff was ordered to pursue a default judgment from the Court.

On February 5, 2008, the government filed its Notice of Motion and Motion for Judgment by Default as to the Interest of Jeremy Cao, Craig Lake, and All Potential Claimants. The hearing date indicated on the cover of the government's filing was March 21, 2008, at 1:30 p.m. before this Court. Copies of the government's filing were mailed to Jeremy Cao at his Rancho Santa Margarita, California address, and to Craig Lake at his Lemon Grove, California address.

As of March 14, 2008, no parties had responded to the government's motion for default judgment, and on that date this Court filed its Order Granting Motion for Judgment by Default Against Jeremy Cao, Craig Lake, and All Potential Claimants.

On March 21, 2008, Craig Lake lodged his Notice of Motion and Motion to Set Aside Entry of Default. The documents did not comply with the requirements of the Local Rules, and were initially rejected

1  by the Clerk of the Court.  On March 21, 2008, however, this Court
2  issued its order directing the Clerk to file the documents *nunc pro*
3  *tunc* to the date received.

4      On April 4, Craig Lake lodged with this Court a document entitled
5  Declaration of Craig Orlando Lake and Seized Asset Claim in Support
6  of Application for Relief from Default.  The document did not comply
7  with the requirements of the Local Rules, and was initially rejected
8  by the Clerk of the Court.  On April 8, 2008, however, this Court
9  issued its order directing the Clerk to file the document *nunc pro*
10 *tunc* to the date received.

11            **2.  <u>Craig Lake Has Not Shown that Good Cause</u>**
                   **<u>Exists to Set Aside the Default Judgment.</u>**
12

13      On April 7, 2008, this Court issued its order setting a hearing
14 date.  The parties were directed to appear before this Court on
15 May 16, 2008 at 1:30 p.m. for a motion hearing relative to Craig
16 Lake's request of relief from entry of default judgment.  A trial
17 court has the discretion to set aside its entry of default for "good
18 cause," and the default judgment for various reasons, including
19 "mistake, inadvertence, or excusable neglect," Federal Rules of Civil
20 Procedure, Rule 60(b)(1).  The Ninth Circuit tends to treat these
21 grounds the same: "A showing of lack of culpability sufficient to meet
22 the Rule 55(c) 'good cause' standard is ordinarily sufficient to
23 demonstrate as well the 'excusable neglect' or 'mistake' criteria
24 under Rule 60(b)(1)." <u>TCI Group Life Ins. Plan v. Knoebber</u>, 244 F.3d
25 691, 696, (9th Cir. 2001).

26      Craig Lake has not affirmatively met any of the particular
27 grounds for relief described in Federal Rules of Civil Procedure,
28 Rule 60(b).  For example, relief may be granted on the showing of

mistake by the responding party.  The mistake can be one of fact or law, but in either case it must relate to the responding party's duty to respond the to complaint, rather than to the merits of plaintiff's claim.  See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999).

Thus, relief may be granted where a party who has been served with process is *reasonably* mistaken as to his or her duty to respond to the complaint.  See Brien v. Pullman Industries, Inc. 71 F.3d 1073,1078 (2nd Cir. 1995); Newhouse v. Probert, 608 F. Supp. 978, 985 (W.D. Mi. 1985).

Here, the instructions on the Notice of Judicial Forfeiture Proceedings served on Craig Lake were clear as to what needed to be done.  Lake was advised that a Complaint for Forfeiture of the defendant 2006 Bentley Flying Spur sedan was filed with this Court. A copy of the complaint was enclosed with the notice.  Moreover, Lake was advised that to contest the forfeiture, he **must** file a Verified Claim with the Clerk of this Court at the stated mailing address within **thirty-five(35) days** of November 5, 2007.  Lake was further instructed to serve a copy of his Verified Claim upon government counsel at the stated mailing address.  Lake was also advised that he **must** file and serve on government counsel an Answer to the Complaint within **twenty (20) days** of the date of the filing of his Verified Claim.  Again, Lake was provided with the mailing addresses for both the Clerk of this Court and government counsel.  In addition to the mandatory filing schedule, Lake was advised of what information his Verified Claim must contain.  Finally, Lake was solemnly warned that his "failure to follow the requirements set forth (in the government's notice) may result in judgment by default taken against you for the

relief demanded in the complaint." The government's notice closed with the admonition to Lake that he seek legal counsel to advise Lake and protect his rights.

Despite these instructions and warnings, Craig Lake did nothing to comply with the legal requirements for a response to a verified complaint for forfeiture. He simply ignored the notice.

Relief from default may also be granted upon a showing of "surprise, inadvertence, or excusable neglect." Federal Rules of Civil Procedure, Rule 60(b). These terms all seem to require that the party moving for default show a reasonable excuse for the default. *See* Meadows v. Dominican Republic, 817 F.2d 517, 520 ( 9th Cir. 1987). The term excusable neglect is not defined in the rules and its meaning must be determined from the case law. The term "neglect" implies carelessness or simple negligence. It need not be shown that the default was due to matters beyond the defendant's control. "At least for the purposes of Rule 60(b) 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 394 (1993).

What constitutes "excusable" neglect requires an examination of the equities:

> . . . [T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the omission. These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Pioneer Investment Services Co. v. Brunswick Associates Lit. Partnership, 507 U.S. at 395.

Particular matters which may result in denial of relief include: (1) prejudice to the non-defaulting party if relief is granted; (2) lack of a meritorious defense by the defaulting party; and (3) culpable conduct by the defaulting party causing the default. TCI Group Life Insurance Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001); Gucci America, Inc. v. Gold Center Jewelry, 158 F.3d 631, 634 (2nd Cir. 1998). This tripartite test is "disjunctive," meaning that the district court is free to deny the motion if any of these three factors is shown to exist. American Association of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108-09 (9th Cir. 2000).

When evaluating the three factors, this Court should use a balancing approach. The Supreme Court has stated that "all relevant circumstances" must be taken into consideration in determining whether an omission is "excusable." Pioneer Investment Services Co. v. Brunswick Associates Lit. Partnership, 507 U.S. at 395. Therefore, no single factor should be conclusive in determining whether relief from default should be granted. Rather, all relevant factors should be balanced in determining whether a party is deserving of the sanction of a default judgment. Information Systems & Network Corporation v. United States, 994 F.2d 792, 796 (D.C. Cir. 1993).

In his April 8, 2008 filing, at page 2 of his Declaration of Craig Orland Lake, in paragraph number 8, Craig Lake asserts the basis for his failure to timely file his claim and answer. Lake states, "Between July 13, 2007 and February 5, 2008, I have also had verbal communications with BRUCE CAMPBELL SMITH, requesting additional time for response to the complaint due to ill health." Lake's representations are absolutely false. The instant matter was not assigned to Assistant U.S. Attorney Bruce Smith until October 9, 2007.

Moreover, government counsel and Craig Lake have had only one telephone conversation.  On October 11, 2007, government counsel reached Craig Lake on his cellular telephone, and requested that Lake submit all documents and materials in support of his claim.  Lake made no mention of his health at that time.  Since that event, government counsel has had no communication with Craig Lake.

          **3.**   **The Government Will Be Prejudiced if the Court Sets Aside the Default Judgment.**

    The government is charged and must pay a daily storage fee to maintain proper custody of the defendant 2006 Bentley Flying Spur sedan.  Because of the high dollar value of the defendant sedan, it must be stored indoors.  The government is charged a daily fee for this storage.  For claimants with a meritorious case, the fees paid for the storage and maintenance of seized assets constitutes a reasonable and necessary cost of doing the government's business.  However, where the claimant's case is frivolous or otherwise without factual support, those costs constitute an unreasonable burden on the taxpayers.

    Craig Lake's proposed claim relative to the defendant 2006 Bentley Flying Spur sedan is absolutely without merit.  Lake did not purchase the defendant sedan.  He is not and never has been the registered owner.  He has not paid the annual DMV registration fees for the defendant sedan.  He has not insured the defendant sedan.  He may have thought of buying the defendant vehicle.  He may have wanted to purchase the defendant vehicle from its owner.  What drives Craig Lake on is his erroneous belief that because the 2006 Bentley Flying Spur sedan was in his possession when it was seized by the USSS agents

//

16

on June 1, 2007, the government is somehow barred from forfeiting the vehicle.  That belief is without legal support.

### 4.  Craig Lake's Proposed Claim Relative To the 2006 Bentley Flying Spur Sedan is without merit.

The party seeking relief from default bears the burden of showing a defense or claim on the asset to be forfeited that might make the result at trial different than that reached by default.  Failure to do so is ground for denial of relief.  <u>Jones v. Phipps</u>, 39 F.3d 158, 165 (7th Cir. 1994); <u>Williams v. Meyer</u>, 346 F.3d 607, 614(6th Cir. 2003).  A litigant seeking to set aside a default judgment must present specific facts that would constitute a defense.  <u>Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.</u>, 375 F.3d 922, 926 (9th Cir. 2004); <u>TCI Group Life Insurance Plan v. Knoebber</u>, 244 F.3d 691, 700 (9th Cir. 2001); <u>Madsen v. Bumb</u>, 419 F.2d 4, 6 (9th Cir. 1969).

First and foremost is the fact that Craig Lake is not the registered owner of the defendant sedan.  Jeremy Cao purchased the vehicle on or about March 8, 2006.  From that date forward, the defendant 2006 Bentley Flying Spur sedan has always been registered in the name of Jeremy Cao, at his Rancho Santa Margarita, California address.  Jeremy Cao owns the defendant sedan outright, and no lienholder is on title.  On March 1, 2007, Jeremy Cao paid the DMV $1,157.00 to renew the registration in his name.  Most recently, on March 10, 2008, Jeremy Cao paid the DMV $1,036.00 to renew the registration in his name until March 8, 2009.  An examination of the official title documents on file with the DMV confirms Craig Lake has no ownership or lien interest in the vehicle.  Craig Lake has no legal basis upon which to assert a claim on the defendant sedan.

Craig Lake has not demonstrated he has a legitimate claim to the defendant 2006 Bentley Flying Spur sedan.  Since the date the defendant vehicle was seized, Craig Lake has offered a variety of stories relative to his relationship to the vehicle.

On June 1, 2007, when the defendant was seized, Lake was interviewed by USSS Agent McCaffree and SDPD Detective Morel.  Lake claimed that he and the registered owner of the 2006 Bentley Flying Spur sedan, in the company of their mutual attorney, discussed the possibility of a sale of the vehicle to Craig Lake.  Later during the interview, Lake changed his tale, and stated that an attorney was not a party to the conversation.  Lake proposed transferring his ownership of 80 acres of land in Utah to Cao in exchange for title to the defendant vehicle.  During the interview, Lake admitted he was aware the defendant vehicle was subject to seizure by the U.S. Government. Jeremy Cao told Lake that the government was looking for the defendant vehicle and planned to seize it.  Craig Lake explained he thought that if he took possession of the defendant vehicle before the government seized it, the government would be unable to go forward with the seizure.  Lake also admitted he has not registered the 2006 Bentley Flying Spur sedan with the DMV.

Craig Lake sent to government counsel a letter relative to the 2006 Bentley Silver Spur sedan, dated October 18, 2007.  A copy of the letter is attached to his March 21, 2008 filing in the instant case, and is designated as "Exhibit C."  On the first page of the letter, in the paragraph numbered 1, Lake claims he met with Jeremy Cao in February 2006 to discuss a business opportunity.  Cao was driving the defendant Bentley sedan.  According to Lake, he instantly became interested in the defendant vehicle and discussed purchasing it from

Cao during that February 2006 meeting.  Lake's account cannot be true.
Jeremy Cao did not take delivery of the defendant Bentley sedan until
March 2006.    The February 2006 meeting between the two men, as
described by Lake, is no more than a fabrication.

The purported exchange of Utah land for the defendant
2006 Bentley Flying Spur sedan does not appear genuine, and apparently
never occurred.  A copy of the letter Craig Lake sent to government
counsel is attached to his March 21, 2008 filing in the instant case,
and is designated as "Exhibit C."  On the third page of the letter,
in the paragraph numbered 6, Lake claims, "I gave Jeremy a Bill of
Sale and Escrow instructions for the Land Basin Title Company.  I keep
checking but the land is not transferred."  Also included with his
filing, Lake provided this Court with a copy of a single-page pre-
printed document entitled, "REAL ESTATE PURCHASE CONTRACT AND RECEIPT
FOR DEPOSIT."  The single-page form, like the three-page letter from
Lake to government counsel, is marked as Exhibit "C."  The form
appears to have been filled out in haste, and is very difficult to
interpret.  Many pre-printed lines are scratched out.  Handwritten
entries were inserted randomly.  The legal description of the parcel
and its location in the State of Utah are incomprehensible.  The form
and its confusing entries can have no legal significance.  The
document conveys absolutely no message to the reader.

In his filing, Craig Lake professes to be surprised that Jeremy
Cao has yet to transfer the mysterious parcel of Utah land into his
name.  No wonder.  It is impossible to imagine any title insurance
company in any region of these United States that would accept Craig
Lake's Exhibit "C" as a document transferring an ownership interest
in a parcel of real property from one party to another.

07cv2100

The "REAL ESTATE PURCHASE CONTRACT AND RECEIPT FOR DEPOSIT" form submitted to this Court by Craig Lake is ludicrous.  The document is meaningless.  It conveys nothing.  In March 2006, Jeremy Cao paid approximately $186,945.00 in cash for the defendant 2006 Bentley Flying Spur sedan.  No rational person would trade that vehicle one year later to Craig Lake for a worthless piece of paper.

Based upon the facts before this Court, Craig Lake has failed to make a showing that if this matter went to trial and was resolved by a jury, the result would differ from that when the Court entered the default order.  Craig Lake has failed to present any facts which support his claim to the defendant 2006 Bentley Flying Spur sedan. He is not, and never has been, the registered owner.  He has not paid the annual DMV registration fees.  He has not insured the vehicle. He has not exchanged anything of value for the vehicle.

On the date the defendant sedan was seized, Craig Lake was simply in possession of the vehicle.  In the spring of 2007, Jeremy Cao and Craig Lake knew the government was preparing to seize the defendant sedan.  Lake believed that if he possessed the vehicle, the government could not seize it.  He was wrong.  Craig Lake did not purchase the defendant sedan.  He has never owned the vehicle.  He has never been the registered owner of the defendant sedan.  He was never financially responsible for the defendant 2006 Bentley Flying Spur.  Craig Lake has absolutely no facts upon which to assert a claim.

### III

### CONCLUSION

Based on the foregoing, the United States requests the default judgment remain in effect.  Craig Lake was properly served with the Verified Complaint for Forfeiture and Notice of Judicial Forfeiture

Proceedings.   The notice contained specific instructions to Lake directing him when and to whom to send his verified claim.   Moreover, the notice instructed Lake when and to whom to send his answer.   He did nothing.   Craig Lake is an educated and intelligent individual, able to understand the directions and timing requirements on the complaint and notice he received.   Lake's delay is costing the government money.   The United States is obligated to maintain the defendant 2006 Bentley Flying Spur sedan during the pendency of this litigation.   Each day that passes generates additional storage costs. This Court should uphold the default judgment and permit the government to sell the defendant sedan.

Craig Lake's willful failure to timely respond to the Verified Complaint for Forfeiture is not the only reason standing in support of the default judgment.   Most central to this Court's consideration should be the paucity of facts supporting Craig Lake's claim to the defendant sedan.   On the day the vehicle was seized, Lake admitted to the law enforcement agents he took possession of the Bentley sedan for the purpose helping Jeremy Cao avoid its seizure by the government. Craig Lake's legal evaluation of the relevant forfeiture law was flawed.   Moreover, there are absolutely no facts before this Court supporting Lake's claim to the defendant sedan.   Craig Lake did not transfer anything of value for the defendant sedan.   He did not purchase the vehicle.   He is not a lienholder.   He is not the registered owner of the vehicle.   Lake has not paid the DMV registration fees.   The facts before this Court demonstrate without contradiction that Craig Lake has no basis upon which to file a claim upon the defendant sedan.

//

1      The default judgment must remain in effect.  To set it aside

2  would result in a wasteful use of scarce United States Government,

3  U.S. Attorney and judicial resources.

4      DATE:  April 25, 2008

5                                    Respectfully submitted,

6                                    KAREN P. HEWITT
                                     United States Attorney
7
                                     s/ Bruce C. Smith
8                                    _____
                                     BRUCE C. SMITH
9                                    Assistant U.S. Attorney
                                     Attorneys for Plaintiff
10                                   United States of America

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,     )  Case No. 07cv2100-DMS(AJB)
                             )
          Plaintiff,  )  CERTIFICATE OF SERVICE
                             )  BY MAIL
       v.                  )
                             )
ONE 2006 BENTLEY FLYING SPUR  )
SEDAN, CALIFORNIA LICENSE     )
NO. 5GAG721               )
VIN: SCBBR53WX6036543,     )
ITS TOOLS AND APPURTENANCES.  )
_____)

IT IS HEREBY CERTIFIED that:

I, Bruce C. Smith, am a citizen of the United States over the age of 18 years and a resident of San Diego County, CA; my business address is 880 Front Street, San Diego, CA 92101-8893; I am not a party to the above-entitled action;

I hereby certify that I have caused to be mailed PLAINTIFF'S RESPONSE AND OPPOSITION TO CRAIG LAKE'S MOTION TO SET ASIDE COURT'S ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT, by the United States Postal Service, to the following non-ECF participant in this case:

Craig Orland Lake, 7951 Broadway, Lemon Grove, CA 91945, the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 24, 2008.

                            s/Bruce C. Smith
                            BRUCE C. SMITH